U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

APR 24 2018

CLERK, U.S. DISTRICT COURT
By_____
  Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| HERBERT PHILIP ANDERSON, | § | |
| | § | |
| Movant, | § | |
| | § | |
| VS. | § | NO. 4:14-CV-192-A |
| | § | (NO. 4:09-CR-115-A) |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

By order signed January 30, 2018, the court ordered movant, Herbert Philip Anderson, and the government each to file a memorandum containing all arguments and authorities, with appropriate references to all pertinent parts of the record,[1] in support of that party's position on the subject of whether an evidentiary hearing of the kind contemplated by the Fifth Circuit in its November 1, 2017 opinion and judgment is required. See United States v. Anderson, 712 F. App'x 383 (5th Cir. 2017). The court also gave each party an opportunity to respond to the memorandum filed by the other. Doc.[2] 29. Having received and

---

[1] Movant failed to comply with the requirement that he provide appropriate references to all pertinent parts of the record in support of his position. See infra at 2, n.3.

[2] The "Doc. __" reference is to the number of the item on the docket in this civil action.

reviewed the memoranda[3] and responses, the court undertakes its analysis as instructed by the Fifth Circuit.

By its memorandum opinion and order of October 6, 2014, the court concluded that an evidentiary hearing was not required because the motion and the files and the records of the case conclusively showed movant was entitled to no relief. See United States v. Bartholomew, 974 F.2d 39, 41 (5th Cir. 1992). With regard to the ground now at issue, the court found that movant presented no basis to conclude that the government knowingly presented any false testimony that had a reasonable likelihood of affecting the judgment of the jury. See United States v. Agurs, 427 U.S. 97, 103 (1976).

---

[3]By order signed March 20, 2018, the court noted that the memorandum filed by movant was replete with references to the opinions of the Fifth Circuit, which are not evidence. And, the filing referred exclusively to the record on appeal, rather than to readily accessible documents. The court specifically pointed out that it had in mind that record references would be to the records in this action and the underlying criminal case, as the government had done. "So that the references [would] conform," the court ordered movant to file a revised memorandum substituting citations to the record in this action and the underlying criminal case for the references to the opinions of the Fifth Circuit or the record on appeal. The order cautioned that failure to comply therewith would result in the court considering the statements made therein to be unsupported. Doc. 33.

On March 29, 2018, movant filed his amended memorandum, Doc. 34, which again did not cite to documents on file in this action or the underlying criminal case, but rather to an electronic transmission made by the clerk to the Fifth Circuit of the record for the appeal. (Movant referred to this transmission as "SOF.") The memorandum was no more helpful than the original in pointing out to the court the items in the record of this court that support movant's contention that a hearing is necessary. As the court noted in its March 20, 2018 order, the Fifth Circuit's opinion itself is not evidence, yet movant continued to rely upon it to establish the facts allegedly supporting his position. See, e.g., Doc. 34 at 18-19, nn. 105-18.

The foregoing notwithstanding, the court has considered all of the records in this action and in the underlying criminal case in determining whether a hearing as requested is required.

The court first notes that the district court's denial of an evidentiary hearing is reviewed on appeal for abuse of discretion. United States v. Edwards, 442 F.3d 258, 264 (5th Cir. 2006). The court of appeals will only grant a hearing if the movant produced independent indicia of the likely merits of his allegations. Id. Here, the appellate court did not find an abuse of discretion. Rather, it simply determined that the district court should consider whether "Steven Adams' January 10, 2016 letter,[4] which was not before the district court, warrants [an evidentiary hearing]." 712 F. App'x at 387. Had the court of appeals determined that the letter warranted a hearing, presumably it would have ordered one.[5] It did not. Thus, the court considers whether the letter would have changed the court's conclusion that movant was not entitled to an evidentiary hearing as he was entitled to no relief as a matter of law.

For all of the reasons discussed herein, the court concludes that the addition of the letter to the record does not change the court's determination that movant is not entitled to an evidentiary hearing. In particular, the letter itself is too questionable to amount to probative evidence of anything. The

---

[4] Hereinafter, the "letter."

[5] The Fifth Circuit's judgment simply states: "It is ordered and adjudged that the judgment of the District Court is affirmed and remanded to the district court to determine whether an evidentiary hearing is required in light of the new evidence." Doc. 27.

3

genesis of the letter is extremely suspicious to say the least.⁶ It appeared, seemingly out of the blue, long after this court had ruled on movant's motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255, Doc. 21, and the Fifth Circuit had granted a certificate of appealability on the issue of whether the government knowingly used material, perjured testimony. There is no reason such a letter could not have been submitted to this court along with movant's § 2255 motion. Doc. 1. Of course, had movant acted diligently, he would have obtained an affidavit or declaration.⁷

The document identified as "the letter" reflects that it is "page 3 of 3" of some item purportedly sent to movant's attorney, Stan Schwieger. Doc. 32 at 008, 016. No explanation has been offered for this notation or where the other pages are or whether the page submitted constitutes the entirety of the letter or only the last page. The letter bears no salutation. Its language is most curious. Given the grammatical errors and misspellings, it is incredible that the purported author articulately says that the Assistant United States Attorney "coached me on how to

---

⁶One wonders if there was a Freudian slip in movant's motion to supplement the record filed in the Fifth Circuit, with movant's multiple references to the author of the letter as Holt. Doc. 32 at 003 & n.8, 004, 005. Further, movant's attorney says that the letter was "purportedly mailed to the undersigned counsel's address." Id. at 003, n.8 (emphasis added).

⁷The Fifth Circuit panel mistakenly referred to the letter as an affidavit in the course of its decision to order the remand. 712 F. App'x at 387.

4

implicate Andy on being present and involved in a drug deal." Id. And, the letter appears to contain the handwriting of at least two or more people. Notably, the attorney's name and address and the date appear to have been written by a different hand and a different writing implement than the body of the letter.

Movant has simply offered no rational explanation for any of the questions surrounding the letter. But, even taking the letter at face value, its substance does not entitle movant to a hearing. The letter simply says, "I made up this story" about movant "being present and involved in a drug deal at Hammers [sic] with Medina." Doc. 32 at 016. The letter does not say that any of the rest of Adams' trial testimony was false.[8]

The letter fails to provide probative evidence[9] that the government knowingly used material, perjured testimony from Adams at trial. Not only does the record on which this court relied in its initial ruling support the court's conclusions, the current record would support the conclusion that Adams did not give false

---

[8] For example, Adams testified that he contacted Gerry through movant, because he remembered movant's telephone number, and that he knew movant well enough to send movant some belts he made in prison craft shop and asked movant to save one for him. CR Doc. 895 at 99. Gerry called Adams on June 5, 2009 and instructed him to bring money he made from selling methamphetamine to Gerry's house. Id. at 101. Adams did so. Id. He walked through the house to the kitchen table and threw the money down. Id. He took a kilo of methamphetamine to the middle bedroom, weighed it and field-tested it, determining that it was good. Id. at 103.

[9] That is, there is no evidence of such quality and weight that fair-minded persons in the exercise of impartial judgment might reach different conclusions. See Boeing Co. v. Shipman, 411 F.2d 365, 374 (5th Cir. 1969).

trial testimony. For example, a report of investigation regarding surveillance conducted June 5, 2009, submitted by movant in his reply to the government's response to the § 2255 motion[10] as Exhibit R, proves that: On June 5, 2009, officers observed movant and Gerry[11] arrive together at Gerry's residence in Bedford, Texas. Doc. 14 at ECF 382, 385-86.[12] They saw Medina, a known methamphetamine source, arrive at the house. Id. at ECF 382, 386. They also saw Adams arrive at the house, where he was greeted at the door by Ms. Nance. Id.

This was just as Adams testified at trial. CR Doc.[13] 895 at 102. The investigative report is confirmed by the information Adams provided in his proffer interview on September 22, 2009, attended by Adams, his attorney, government agents, and the assistant United States Attorney handling the case, Fred Schattman. Doc. 14 at ECF 371, 373-74. And it also is confirmed by the facts to which Adams stipulated in his factual resume, which he swore were true in open court at his rearraignment on

---

[10]Movant called the reply a "transverse" [sic]. Doc. 14.

[11]Thomas Gerry was referred to as "Hammer."

[12]The "ECF __" reference is to the PageID number assigned by the court's electronic filing system and reflected at the top right portion of the page.

[13]The "CR Doc. __" reference is to the number of the item on the docket in the underlying criminal case. The court notes that the clerk's office carries a separate criminal docket for each defendant in a multi-defendant case and a master docket that shows items docketed for all defendants. The "CR Doc. __" reference is to the master docket.

December 11, 2009. CR Doc. 928 at 58; CR Doc. 383. Adams' attorney confirmed that the stipulated facts were consistent with his understanding of the true facts. CR Doc. 928 at 58.

Other trial evidence, including transcripts of conversations between movant and Gerry, established that the June 5, 2009 transaction took place and that movant was at Gerry's house as events transpired. See, e.g., CR Doc. 895 at 72, 76-77, 80, 82, 84-87.

At trial, Adams was asked about a letter he wrote on August 30, 2009 (the "2009 letter"), which stated:

> I, Steve Ray Adams, have known Mr. Anderson, otherwise known as Andy, since March 2002. I have had the pleasure of meeting Andy in his home and at his business, and at no time have I ever witnessed Andy, or anyone around him, doing any drugs or being involved in any illegal activity. To the best of my knowledge, Andy is an upstanding citizen and a legitimate businessman.

CR Doc. 895 at 109-10. Adams explained that he wrote the 2009 letter because movant asked him to do it and "it was like I didn't have much of a choice."[14] Id. at 105. Further, Adams thought the 2009 letter was going to help movant make his bond. Id. at 106. In exchange for the 2009 letter, movant promised to look out for Adams. Id. The newly-produced letter does not recant

---

[14] Roger George Flittie testified that he was likewise "invited" to write a similar letter to support and exonerate movant. CR Doc. 895 at 141-42.

7

any of this testimony. It simply says that the 2009 letter was the truth.

The 2009 letter was admitted into evidence as defense Exhibit 9 at the trial. CR Doc. 895 at 107-08. The government and movant each filed a copy of the 2009 letter in response to the court's order signed April 19, 2018. Docs. 37 & 40. The handwriting on the 2009 letter, Doc. 39, bears no resemblance in any manner to the letter recently produced; nor do the signatures appear to have come from the same person.

Nothing about the newly-produced letter could lead to a conclusion that the government knowingly used perjured testimony. See Agurs, 427 U.S. at 103. This is especially so since the evidence unequivocally establishes that the June 5, 2009 transaction took place. Any contention that movant was not present and involved is belied by the record. The notion that Schattman coached Adams to testify falsely is incredible, given that such a scheme would have necessarily involved Adams' attorney, the surveillance officers, and the government's investigator.

Further, the new letter adds nothing to the previously considered § 2255 materials, which are hearsay, conclusory, and unsupported. Doc. 1, Exs. H, I, J & K (ECF 133-82). For example, none of the so-called declarants testified at trial. There is no

reason to believe that what any of them says now is true, i.e., that they are reliable third persons. See United States v. Reed, 719 F.3d 369, 373 (5th Cir. 2013). Just putting a notary stamp on Exhibit H does not make it an affidavit or a declaration. Doc. 1 at ECF 134. (Exhibit H is typical of letters the court frequently receives from inmates claiming to have heard that a cellmate lied.[15]) As for Exhibits I, J and K, which purport to be transcripts of telephone interviews conducted by an attorney for movant, there is no indication of what kind of oath was given, where it was given, or by whom. The transcripts simply reflect that each witness was "duly sworn." Doc. 1 at ECF 138, 153, 173. They are not signed by the deponents and only Exhibit K contains a certification signed by the court reporter. Id. at ECF 138-82.

Movant's co-defendant, Holt, says that he did not testify at trial and would not have testified. Doc. 1 at ECF 142. He relates that the government's attorney did what one would expect and what every prosecutor does. He sought information regarding other participants in the criminal activity. Investigators told Holt they knew movant was involved and so was Holt and "they said that I knew more than what I was saying." Id. at ECF 148. Contrary to movant's contention, that is not asking for false testimony, but

---

[15]This seems to be a common occurrence. Inmates lie to one another and lie about what other inmates have said.

rather for Holt to reveal what he knew. David Burney was another cellmate who did not testify at trial. His interview is replete with recitations about testimony at a trial he did attend. Id., Ex. J. He confirms that everyone was "snitching and lying and doing this and that." Id. at ECF 160. The interview of Alfredo Medina, the source of the methamphetamine, is no more relevant. Id., Ex. K. Medina is asked about a photograph that is not included in the exhibit, but is presumably of movant. Id. at ECF 179. Medina basically says that he does not know movant, i.e., does not know his name, because he does not speak English[16] and he does not greet people when he goes to do drug deals. Id. at ECF 179-80. Moreover, it is clear from the end of the conversation that Medina agreed to give the interview because he wanted some help in firing his own attorney, and that conversation continues off the record. Id. at ECF 181.

With regard to whether Adams, Coleman, and Flittie testified truthfully at trial,[17] the jury was fully informed about their extensive criminal backgrounds and plea agreements and could

---

[16]In this regard, both Medina and Holt confirmed that Medina needed a translator and often used his wife or a "computer" to do the translating. Doc. 1, Exs. J & K. This supports Adams' trial testimony that movant translated for Medina on June 5, 2009.

[17]The court notes that the letter submitted as Exhibit H in support of movant's § 2255 motion does not say that any of these persons was coached by the government's attorney to lie, but rather that the three themselves "come up with a plan to make up a lie about Andy Anderson so they may get a time cut on there [sic] sentences." Doc. 1 at ECF 134.

determine for itself whether to believe any of them. CR Doc. 894 at 264-70; CR Doc. 895 at 94-98, 132-34. Movant was represented by retained counsel at trial and on appeal and apparently had the resources to fully defend himself. The court has already determined that they provided effective representation.

In sum, Adams was sworn to tell the truth as a witness in the underlying criminal trial and at his own rearraignment. His solemn testimony in open court bears a strong presumption of verity. The conclusory allegations made in the letter are contentions that in the face of the record are wholly incredible and do not entitle movant to an evidentiary hearing. <u>Blackledge v. Allison</u>, 431 U.S. 63, 74 (1977). The record affirmatively contradicts movant's contention that the government knowingly used perjured testimony at his trial.

The court ORDERS and DECLARES that an evidentiary hearing is not required in light of the new evidence, that is, the letter.

SIGNED April 24, 2018.

JOHN McBRYDE
United States District Judge